# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| SUNBUTTER LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | Judge: |
| JAMS FROZEN PB&J INC. and THE DROPOUT COMPANIES, INC., | ) ) ) | Magistrate Judge: |
| Defendants. | ) ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff SunButter LLC ("Plaintiff"), for its Complaint against Defendants Jams Frozen PB&J Inc. and The Dropout Companies, Inc. ("Defendants"), states and alleges as follows:

## INTRODUCTION

1. Plaintiff is a North Dakota-based food manufacturer. Since 2023, Plaintiff has operated as the source of the JAMMIES sandwiches.

2. Plaintiff's JAMMIES sandwiches are carried in over 8,000 retail locations, including Walmart, Kroger, and Albertsons, with the mark JAMMIES subject of the Company's Federal Trademark Registration No. 7,907,295.

3. Plaintiff has advertised and promoted its JAMMIES trademark extensively, developing widespread goodwill and recognition with its local and national customers. As a result, Plaintiff's JAMMIES trademark is entitled to a broad scope of protection against unpermitted third-party use or registration.

4. Defendants have begun using the mark JAMS in connection with identical frozen sandwiches incorporating jam and nut or seed butter.

5. Defendants also sell in national retail markets, including Target and Walmart, to the same local and national consumers to whom Plaintiff markets its goods.

6. Defendants' goods are not Plaintiff's goods nor are they associated with Plaintiff in any way. Consumers would not, however, know that based on Defendant's use of its confusingly similar trademark.

7. Defendants' unfair activities—confusing to consumers and harmful to Plaintiff— must be stopped.

## THE PARTIES

8. Plaintiff is a North Dakota corporation with a principal place of business at 501 42nd Street NW, Fargo, ND 58102, USA.

9. On information and belief, Defendant Jams Frozen PB&J Inc. is a Delaware corporation with its principal place of business at 1009B Southside Avenue, Nashville, TN 37203, USA.

10. On information and belief, Defendant The Dropout Companies, Inc. is a Delaware corporation with its principal place of business at 1009A Southside Avenue, Nashville, TN 37203, USA.

## JURISDICTION AND VENUE

11. This lawsuit arises under the laws of the United States, namely, trademark infringement under the Lanham Act, 15 U.S.C. § 1114 *et seq.*, and federal unfair competition under the Lanham Act, 15 U.S.C. § 1125 *et seq.* This Court has subject matter jurisdiction over these claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

12.      Plaintiff also alleges violations of the laws of the State of Tennessee for consumer deception under Tenn. Code Ann. § 47-18-104 *et seq.*, and common law trademark infringement. These claims are part of the same case or controversy as Plaintiff's claims arising under the laws of the United States, such that they would ordinarily expect to be tried in a single judicial proceeding. Accordingly, this Court has proper supplemental subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

13.      Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(1)-(2). Defendants are Delaware corporations headquartered in Nashville, Tennessee. Upon information and belief, Defendants employ a number of employees in Nashville, Tennessee. Further, Defendants promote, offer, and sell their goods under the infringing trademark to consumers in this District. Specifically, Defendants offer frozen jam and peanut butter sandwiches. Moreover, upon information and belief, the decisions concerning the adoption, development, and use of the JAMS mark was made in Nashville, Tennessee, where Defendants' production facilities are located and where their marketing, production, and branding documents are kept. Plaintiff has suffered injury in this District because of Defendants' acts of trademark infringement, false designation of origin, deceptive trade practices, and unfair competition.

## STATEMENT OF FACTS

*Plaintiff's Distinctive Trademarks*

14.      Plaintiff sells its world-renowned frozen jam and sunflower seed-butter sandwiches under the JAMMIES® trademark and has done so in the United States since at least as early as August 2023.

15.      Plaintiff is the owner of the following registered United States trademark registration for the JAMMIES mark for use in connection with sandwich goods:

| Mark/Name/RN/SN | Full Goods | Status/Key Dates | Owner Information |
|---|---|---|---|
| JAMMIES Registration No. 7,907,295 | Sandwiches, namely, sunflower butter and jelly sandwiches | First Use: August 2023 Filed: December 7, 2022 Registered: August 19, 2025 Register Type: Principal Register | SunButter LLC, 501 42nd Street NW, Fargo, ND 58102 United States of America |

Attached hereto as Ex. A, find registration certificate for the mark set forth above.

16.   An example of Plaintiff's mark as it appears on Plaintiff's website and product boxes is set forth below:



17.   U.S. Registration No. 7,907,295 is conclusive evidence of the validity of Plaintiff's ownership of, and Plaintiff's exclusive right to use, the claimed trademarks or any confusingly similar variation thereof in connection with the associated goods and those goods in the natural zone of expansion therefor.

18.     Since at least as early as August 2023, Plaintiff has advertised and promoted its JAMMIES trademark extensively, including online and via social media, and it has made substantial sales of its goods under the JAMMIES trademark.

19.     In 2024 alone, Plaintiff spent more than $1 million on advertising and promoting its JAMMIES branded products.

20.     Plaintiff has sold JAMMIES branded products nationwide since at least as early as 2023.

21.     Specifically, Plaintiff has sold its JAMMIES branded frozen sandwiches in HyVee, Meijer, and Wegmans since August 2023, Kroger since October 2023, Ahold Giant Carlisle since May 2024, Fresh Thyme since July 2024, Sprouts since September 2024, Dermoulas/Market Basket since November 2024, Albertson's and Safeway since January 2025 and Walmart since July 2025.

22.     As a result of these activities, the JAMMIES mark had achieved widespread, national consumer recognition by the time Defendants began using the JAMS mark.

23.     Plaintiff had made substantial nationwide sales by the time Defendants began using the JAMS mark.

24.     By the time Defendants launched their JAMS branded products, Plaintiff's sales were substantial. Notably, Plaintiff's JAMMIES branded products had attained 19% All Commodity Volume (ACV) Distribution in Total US Multi-Outlet and 45% ACV Distribution in Total US Natural Channel.

25.     Plaintiff's investment in its JAMMIES mark and products had made it a strong mark entitled to broad protection against third party infringement.

26. In addition to and in light of the above-described advertising and promotion, the JAMMIES trademark has gained such widespread consumer recognition and secondary meaning that they have acquired distinctiveness. Indeed, consumers have come to know, rely upon, and recognize the JAMMIES trademark as the identifying indicium of Plaintiff and its goods.

27. As a result of substantial promotional, advertising, publicity, and public relations activities, the JAMMIES trademark has acquired substantial goodwill and is an extremely valuable commercial asset.

*Defendants' Confusingly Similar Trademarks*

28. Despite Plaintiff's rights in and to its JAMMIES trademark, Defendants have and continue to infringe upon Plaintiff's exclusive trademark rights through their advertising, promotion, use, and sale of its goods under the mark JAMS. An example of Defendants' JAMS mark as it appears on Defendants' website is set forth below:







29. Defendants began using the infringing JAMS mark after Plaintiff had already used its confusingly similar and famous JAMMIES mark in commerce in the United States.

30. Defendants' use of the infringing JAMS mark and promotion and sale of their goods under those trademarks is without Plaintiff's authorization or consent.

31. Defendants have also sought federal registration for two JAMS-formative marks (Ser. Nos. 99/042,104 and 98/671,331.

32. On July 29, 2024, Defendants filed Application Ser. No. 98/671,331 on an intent-to-use basis, indicating that Defendants had not yet used their JAMS mark in class 30 in commerce as of that date.

33. On February 14, 2025, Defendants filed Application Ser. No. 99/042,104 on an intent-to-use basis, indicating that Defendants had not yet used their JAMS mark in class 30 in commerce as of that date.

34. On October 3, 2025, Plaintiff's Registration was cited in the Trademark Office's likelihood of confusion refusal of Defendant's pending application for federal registration of the mark JAMS, Ser. No. 99/042,104.

*Defendants' JAMS Mark is Likely to Cause Confusion with Plaintiff's JAMMIES Mark*

35. Defendants are offering similar goods as Plaintiff under confusingly similar trademarks.

36. Defendants and Plaintiff both use their respective trademarks identified above in connection with identical goods – principally, frozen jam and nut or seed butter-based sandwiches – thus, heightening the potential for consumer confusion.

37. Plaintiff's goods offered under its JAMMIES mark and Defendants' goods offered under their JAMS mark are marketed and promoted in the same geographic area, i.e., nationally, at retailers such as Target and Walmart.

38. Plaintiff's goods offered under its JAMMIES mark and Defendants' goods offered under their JAMS mark are also marketed and promoted to the same consumers through overlapping channels of trade. Both Plaintiff and Defendants market, promote, and sell their goods to the entire public.

39. The JAMS mark is confusingly similar to Plaintiff's earlier used and registered JAMMIES trademark. Both the Plaintiff's and the Defendants' marks are used in conjunction with the provision of frozen sandwich goods and are sold to overlapping consumers via the same channels of trade. The JAMS mark is nearly identical in sight, sound, and meaning to the JAMMIES mark owned by Plaintiff. Both parties' marks feature the word JAM(S) and based on

consumers general rather than specific memory of brand identifiers, they are likely to view and recall these marks as indistinguishable.

40. Defendants' use of the JAMS mark has already caused confusion with Plaintiff's JAMMIES mark.

41. On July 9, 2025, Plaintiff received an email from a replenishment manager at Walmart mistaking Defendant's JAMS product for Plaintiff's JAMMIES product.

42. Subsequently, during an online meeting on or around October 2025, a Walmart Media Connect – Walmart's advertising arm – representative congratulated Plaintiff's Senior Marketing Manager regarding the success of JAMS.

43. Defendants' use of the JAMS mark, upon information and belief, was intended to and did mislead retailers and purchasing consumers regarding the commercial source, affiliation, sponsorship, and approval of Defendants' goods.

44. Defendants' use of the JAMS mark, in connection with the same type of goods targeted to the same consumers through the same trade channels as Plaintiff, constitutes false designation of origin, trademark infringement, and unfair competition, as such use is likely to confuse the relevant consuming public into believing the goods being offered under the JAMS mark are the same as, offered by, affiliated with, sponsored by, or otherwise associated with Plaintiff. This is particularly true given the market context in which consumers are viewing the parties' logo designations and the fact that a purchaser's recollection of design marks is often of a general, rather than specific, nature, such that the marks may be confusingly similar despite any alleged differences between them.

45. Defendants are and have been aware of Plaintiff's prior rights in its JAMMIES mark and the likelihood of confusion created by use of the JAMS mark, yet they continue to

infringe upon the same. On October 3, 2025, Plaintiff's Registration was cited in the Trademark Office's likelihood of confusion refusal of Defendants' pending application for federal registration of the mark JAMS, Ser. No. 99/042,104.

46. Also in October 2025, two of Defendants' employees traveled to Minnesota to meet with Target in order to negotiate a potential business relationship.

47. After the October 2025 meeting with Target, Target agreed to sell Defendants' JAMS products in its stores nationwide.

48. As early as December 10, 2025, counsel for Plaintiff sent a letter to Defendant Jams Frozen PB&J Inc. requesting assurances that it would fully and permanently cease and desist from further use of the mark JAMS. *See* Ex. B.

49. On December 26, 2025, counsel for Defendants responded to Plaintiff's December 10 letter refusing to cease use of the JAMS mark. *See* Ex. C.

50. Defendants' use of the JAMS mark and sale of goods under the same has been and is willful and in reckless disregard of Plaintiff's rights.

51. On information and belief, Defendants are deriving and will continue to derive measurable revenue from their goods provided under the JAMS mark. As a result of Defendants' unauthorized use of trademarks and logo designations that are confusingly similar to the JAMMIES mark, Defendants are being unjustly enriched at Plaintiff's expense.

52. The likely confusion caused by Defendants' use of the infringing JAMS mark has and will continue to harm Plaintiff. Specifically, Plaintiff has developed a reputation for providing high-quality frozen sandwiches under the JAMMIES mark. Due to the confusingly similar nature of the JAMS mark, consumers are likely to wrongly associate Plaintiff and its goods with the

Defendants and their goods which may not be of the same quality as Plaintiff's goods offered under its JAMMIES mark.

53.     The risk of confusion is particularly dangerous here, where consumers of Plaintiff's JAMMIES branded products may be seeking out an alternative to nut butter based frozen sandwiches due to severe and life-threatening nut allergies. The heightened risk resulting from Defendants' confusingly similar JAMS mark used in connection with almost identical goods must be enjoined as a matter of public safety.

54.     Moreover, through its unauthorized use of a trademark that is confusingly similar to the JAMMIES mark, Defendants (a) have traded upon and threaten to further trade upon the significant and valuable goodwill in Plaintiff's JAMMIES mark; (b) are likely to cause public confusion as to the source, sponsorship, or affiliation of Defendant's goods vis-à-vis Plaintiff and its brand; (c) have damaged and threaten to further damage Plaintiff's significant and valuable goodwill in its JAMMIES mark; (d) have injured and threaten to further injure Plaintiff's right to use its JAMMIES mark as the exclusive indicia of origin of Plaintiff's frozen sandwiches throughout the United States; and (e) have lessened the capacity of Plaintiff's JAMMIES mark to indicate that its goods originate from Plaintiff.

55.     Defendants' continued use of their JAMS mark will continue to confuse consumers, erode the goodwill of Plaintiff and its JAMMIES mark and harm the business and commercial reputation of Plaintiff.

56.     Unless these infringing acts by Defendants are restrained by this Court, they will cause irreparable injury to Plaintiff and to the public, for which there is no adequate remedy at law.  Defendants should be enjoined from continuing their infringing conduct.

57. Defendants have marketed, advertised, promoted, distributed, offered for sale, and sold their JAMS-branded frozen peanut butter and jelly sandwiches through interstate and Tennessee commerce, including through major national retailers such as Walmart and Target, using packaging, point-of-sale materials, websites, social media, and other consumer-facing advertising directed to the purchasing public.

58. Defendants intentionally selected and adopted the JAMS mark for use in connection with frozen peanut butter and jelly sandwiches that are identical or substantially similar to Plaintiff's frozen sandwich products, and promoted those goods through the same retail outlets, to the same classes of purchasers, and through the same channels of trade in which Plaintiff had already established substantial goodwill under the JAMMIES mark.

59. The confusion created by Defendants' conduct is not merely theoretical. Marketplace participants have already mistaken Defendants' products for Plaintiff's products, including Walmart personnel responsible for inventory management and advertising, demonstrating that Defendants' conduct has actually deceived commercial purchasers and intermediaries in the marketplace.

60. Defendants' deceptive use of the JAMS mark is material because consumers purchasing frozen peanut butter and jelly sandwiches frequently make purchasing decisions based upon brand identity, product reputation, retailer recognition, and perceived affiliation with established brands. Defendants' conduct is therefore likely to influence consumer purchasing decisions.

61. Defendants' conduct presents an enhanced risk of consumer deception in Tennessee and nationwide because Plaintiff's products are made with sunflower seed butter and are marketed

to consumers seeking an alternative to peanut butter products, including consumers and families concerned about peanut allergies. Consumers who mistakenly believe Defendants' peanut butter products originate with or are associated with Plaintiff may purchase products they otherwise would not have purchased, creating an unnecessary risk to allergy-sensitive consumers.

62. As a direct and proximate result of Defendants' deceptive marketplace conduct, Plaintiff has suffered and continues to suffer an ascertainable loss of revenue, including diverted sales, loss of business opportunities, injury to customer and retailer relationships, loss of goodwill associated with the JAMMIES mark, diminution in the value of its brand, and potential expenditures incurred to investigate and correct marketplace confusion.

## COUNT I - FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

63. Plaintiff repeats and re-alleges the paragraphs above.

64. Defendants' promotion, use, and sale of their goods under their JAMS mark, which are confusingly similar to Plaintiff's JAMMIES mark and which are used in connection with the promotion and sale of goods identical to and related to the goods of Plaintiff, is likely to cause confusion, to cause mistake, or to deceive as to the source, affiliation, connection, or association of Defendants or their goods with Plaintiff or its goods, and/or as to the sponsorship or approval of Defendants' goods by Plaintiff in violation of 15 U.S.C. § 1125(a).

65. Defendants were aware of Plaintiff's rights in the JAMMIES mark and the likely confusion caused by their use of the JAMS mark since at least as early as October 3, 2025, and Defendants still chose to use their infringing JAMS mark. Defendants' promotion, use, and sale of goods under the JAMS mark from at least that date onward is willful and in reckless disregard of Plaintiff's rights.

66. Defendant's acts constitute a false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

67. Plaintiff has been damaged by the actions of Defendants in an amount which is as yet undetermined, and Plaintiff is entitled to actual damages, trebled damages, an accounting of Defendant's profits, and attorneys' fees and costs for Defendants' willful activities pursuant to 15 U.S.C. § 1117.

68. If the acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II – FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

69. Plaintiff repeats and re-alleges the paragraphs above.

70. The acts of Defendants complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, approval, or affiliation as between Defendants and their goods under the JAMS mark on the one hand, and Plaintiff and its goods under the JAMMIES mark on the other.

71. Defendants' conduct constitutes federal trademark infringement in violation of 15 U.S.C. § 1114(1).

72. As a direct and proximate result of Defendants' infringement, Plaintiff has been, is now, and, unless Defendants are enjoined by the Court, will continue to be irreparably harmed and damaged, and Plaintiff has no adequate remedy at law.

73. By reason of Defendants' bad faith and willful infringement, Plaintiff is entitled to recover actual damages, treble damages, an accounting for Defendants' infringing profits, attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117, as well as injunctive relief pursuant to 15 U.S.C. § 1116.

-15-

## COUNT III - COMMON LAW TRADEMARK INFRINGEMENT

74.     Plaintiff repeats and re-alleges the paragraphs above.

75.     The acts of Defendants complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, approval, or affiliation as between Defendants and their goods under the JAMS mark on the one hand, and Plaintiff and its goods under the JAMMIES mark, on the other.

76.     Defendants' conduct constitutes common law trademark infringement.

77.     As a direct and proximate result of Defendants' infringement, Plaintiff has been, is now, and, unless Defendants are enjoined by the Court, will continue to be irreparably harmed and damaged for which Plaintiff has no adequate remedy at law.

78.     Plaintiff is entitled to actual and enhanced damages as well as injunctive relief.

## COUNT IV – CONSUMER DECEPTION UNDER TENN. CODE ANN. § 47-18-104

79.     Plaintiff repeats and re-alleges the paragraphs above.

80.     Defendants' advertising, promotion, offering for sale, distribution, and sale of frozen peanut butter and jelly sandwiches under the JAMS mark constitute acts affecting trade or commerce within the meaning of Tenn. Code Ann. § 47-18-103.

81.     Defendants have engaged in unfair or deceptive acts or practices prohibited by Tenn. Code Ann. § 47-18-104, including but not limited to: (a) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods; (b) causing a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of Defendants with Plaintiff; and (c) representing, expressly or by implication, that Defendants' goods are affiliated with, sponsored by, approved by, or otherwise associated with Plaintiff when they are not.

82. Defendants intentionally selected and used the JAMS mark in connection with identical frozen sandwich products sold through the same retail outlets and marketing channels used by Plaintiff, creating a likelihood that consumers would mistakenly believe Defendants' products originate with, are sponsored by, or are affiliated with Plaintiff.

83. Defendants continued these deceptive practices after the United States Patent and Trademark Office refused registration of the JAMS mark based upon a likelihood of confusion with Plaintiff's federally registered JAMMIES mark and after Plaintiff demanded that Defendants cease their infringing conduct.

84. Defendants' deceptive conduct has caused actual marketplace confusion, including confusion by Walmart personnel regarding the source of Defendants' products, demonstrating that Defendants' conduct has the capacity and tendency to deceive consumers.

85. Defendants' conduct presents an enhanced risk of consumer deception because Plaintiff's products are made with sunflower seed butter and are marketed to consumers seeking an alternative to peanut butter products, including consumers and families concerned about peanut allergies. Consumers who mistakenly believe Defendants' peanut butter products originate with or are associated with Plaintiff may purchase products they otherwise would not have purchased, creating an unnecessary risk to allergy-sensitive consumers.

86. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff has suffered an ascertainable loss of money, goodwill, customer relationships, business reputation, and the value of its JAMMIES mark.

87. Defendants' violations were knowing and willful, entitling Plaintiff to recover treble damages pursuant to Tenn. Code Ann. § 47-18-109(a)(3), together with attorneys' fees, costs, injunctive relief, and such further relief as the Court deems just and proper.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

A.      Permanently enjoining and restraining the Defendants and Defendants' managers, members, directors, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under Defendants:

1.      from using in any way the JAMS mark or any trademark that is confusingly similar to the JAMMIES mark in connection with frozen sandwich goods;

2.      from committing any acts of unfair competition, from creating a false designation of origin, and from engaging in deceptive trade practices with respect to the JAMS mark;

3.      from using in any manner menus, packaging, labels, signs, literature, display cards, apparel, or other packaging, advertising, or promotional materials, or other materials which include the infringing JAMS mark, and any other trademark confusingly similar to Plaintiff's JAMMIES mark;

4.      from making any statements on promotional materials or advertising for Defendants' goods which are false or misleading as to source or origin;

5.      from committing any acts of trademark infringement, false designation of origin, deceptive trade practices, or unfair competition calculated to cause members of the trade or purchasing public to believe that Defendants' goods are the goods of Plaintiff or sponsored by or associated with, or related to, or connected with, or in some way endorsed or promoted by Plaintiff under the supervision or control of Plaintiff.

B.      Requiring that the Defendants destroy any and all packaging, containers, signs, packaging materials, printing plates, apparel, and advertising or promotional materials and any

materials used in the preparation thereof, which in any way use or make reference to the infringing JAMS mark or any trademark confusingly similar to the JAMMIES mark.

C. Requiring that Defendants, within thirty (30) days after service of notice in entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon the Plaintiff's counsel a written report under oath setting forth details of the manner in which they have complied with the Court's order pursuant to paragraphs A - B above.

D. Awarding Plaintiff profits, actual damages, trebled or enhanced damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117 and common law.

F. Awarding pre- and post-judgment interest in the highest amount allowable by law.

G. Awarding Plaintiff such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff requests a jury on all issues so triable.

**MERCHANT & GOULD. P.C.**

Dated: July 16, 2026

*/s/ Elizabeth Harwood Pierce*
Elizabeth Harwood Pierce
Merchant & Gould P.C.
800 S. Gay Street, Suite 2150
Knoxville, TN 37929
*Attorney for Plaintiff*
*SunButter LLC*